861 F.2d 729
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CASCADE DEVELOPMENT CO., INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 88-1393.
 United States Court of Appeals, Federal Circuit.
 Sept. 26, 1988.
 
 Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and MAYER, Circuit Judge.
 NICHOLS, Senior Circuit Judge.
 DECISION
 The United States Claims Court order of dismissal in No. 342-86L, dated April 22, 1988 (Tidwell, J.), is vacated and the cause is remanded for further proceedings consistent with this opinion.
 
 OPINION
 
 1
 This case when before us as No. 87-1518, generated three unpublished opinions or orders, and there follows hereinafter a fourth, and little or no progress has been made in solving the factual and legal problems it presents. Surely there must be a better way. Taught by previous experience, we try to leave nothing unsaid that is needed to make our position clear.
 
 
 2
 The nature of the claim can be stated briefly as we are writing only for the parties, who must be all too familiar with the case by this time. The claimant, then, seeks in the Claims Court, fifth amendment just compensation under the Tucker Act, 28 U.S.C. Sec. 1491, for a taking of its mineral property in a wilderness area, as allegedly accomplished by or under the Alpine Lakes Area Management Act, Pub.L. No. 94-357, 90 Stat. 905, Act of July 12, 1976, and certain activities of the Department of Agriculture in implementation thereof. The first dismissal was on the ground the statute of limitations, 28 U.S.C. Sec. 2501, had run, the filing date having been over 6 years after the taking date. As the government before us conceded, that if a taking had occurred at all, which it denied, it occurred less than 6 years before action was brought, June 2, 1986. We vacated that dismissal. Apart from the concession, there was no basis for saying the action must have accrued before June 2, 1980, past the possibility of proving otherwise. Specifically, we did not rule out 1984 or 1985 as possible taking dates, or any other one after June 2, 1980. We note our holding has somehow been transmuted into one that the cause of action had not even accrued on the date of our first decision, which we did not knowingly say or intend.
 
 
 3
 The court, on government motion, entered a new order of dismissal on April 22, 1988, and the resultant judgment is the subject of the new appeal. The ground of dismissal is now stated to be nonexhaustion of administrative remedies. We agree that the court is justified in wanting to smoke out and know the administrative position as to allowing plaintiff access to its property, before deciding whether or when a taking has occurred. Since exhaustion is not jurisdictional, however, we believe plaintiff is entitled to the benefit of its original filing date in dealing with statute of limitations concerns, which are by no means eliminated entirely by anything we have held or even said. Moreover, there may have been a temporary taking period even before exhaustion. There is no reason why a suit should not merely be stayed pending exhaustion and this we hold should be done. The government itself suggested a stay.
 
 
 4
 This case is, in one way, an intermediate. It is not the pure regulatory taking, or alleged taking case where the government does not want the property, but may be held to have taken it, making the government an involuntary purchaser because of the impact of its regulation. It is not the case of a legislative taking where the statute itself passes title. It is a case where the government wants the property and needs it to effectuate the purposes of the statute, but provides that title shall pass only parcel by parcel as appropriated funds become available, or payment by exchange is possible. As stated in Drakes Bay Land Co. v. United States, 424 F.2d 574, 584 (Ct.Cl.1970), on remand, 459 F.2d 504 (Ct.Cl.1972), it is especially easy for the court to discover an unacknowledged intent to take in such a case. It is also one where government officials and attorneys are tempted, lacking needed purchase money, but acting perhaps in perfect good faith, to multiply procedures and require a claimant to perform useless and stultifying rituals. The situation comes to resemble that described in Drakes Bay, 424 F.2d at 586:
 
 
 5
 Thus plaintiff remains without a market for its land. The private sector is not interested, understandably, because of the well publicized threat of eventual condemnation of Seashore realty. The public sector, namely the National Park Service, is not interested because after having successfully thwarted plaintiff's subdivision plans, it realizes that plaintiff is a party who can be deferred interminably, and dealt with at pleasure.
 
 
 6
 Another instance of that kind of thing is Benenson v. United States, 548 F.2d 939 (Ct.Cl.1977), which involved the old Willard Hotel in Washington, D.C.
 
 
 7
 In such a situation, when it exists and where its existence can be suspected, it is the duty of the court to retain jurisdiction, to monitor what goes on, to act affirmatively within its proper jurisdiction, and not to abdicate its functions with needless dismissals. The remarks of the trial court, both informally from the bench while hearing the motion, and in its order, show it strongly suspects the existence of a Drakes Bay situation. The appropriate response would not be dismissal unless, as is not true here, the lack of jurisdiction of the court allowed no alternative.
 
 
 8
 For a holding that the defense of failure to exhaust is not jurisdictional, even when the court believes a remedy has not been and should be exhausted, see Allied-General Nuclear Services v. United States, 839 F.2d 1572, 1575 (Fed.Cir.1988), petition for cert. filed, 56 U.S.L.W. 3819 (U.S. May 20, 1988) (No. 87-1902). Here, however, there is more.
 
 
 9
 There is some tension in the Act between the statement in section 4 that the right of access of owners of land not yet acquired shall not be denied, and the whole remainder of the statutory scheme. This provision does not have a counterpart in the Act construed in Drakes Bay, and may be intended to guard against the Drakes Bay result. We need a decision, which the permit application should elicit, as to how the Secretary resolves this ambiguity.
 
 
 10
 The conclusion that an application for a permit to mine would not be futile here depends almost wholly on statements by government counsel, based on documents he had recently received, but whose text he did not file. Apparently there has been a realization, if belated, that even in a good cause, denial of a permit to use property, for the purpose for which the owner acquired it, may generate an unplanned and unbudgeted taking liability. It is difficult for a court to doubt the accuracy of statements by Department of Justice counsel as to the government's position, because such counsel's statements are the government's position, so far as the court is concerned, just as the Constitution is what the Justices say it is. That is a power they have.
 
 
 11
 However, it is clear from the record that the recent statements of counsel reflect a change of heart. He announces: "he [appellant] has a new ball game." [Tr. 37a.] The Burkholder affidavit reflects the occurrence of 1984 conversations with Forest Service representatives indicating plainly that, at that time, any application for a permit would have been futile. The property was considered to belong to the government already, the government was going to condemn it, and any mining activity was simply not going to happen. The government offers no contradictory affidavit. It does not deny the conversations occurred as described. It does not disavow the authority of the officials to say what they did. It says only--and we agree--the court is now entitled to a formal determination or holding by an official at the highest level.
 
 
 12
 If the application for a permit would have been futile, and is nonfutile now because of a change of heart, it certainly remains arguable the taking of the fee occurred in 1984 or 1985, and appellant may be entitled to delay damages to run from some such date. The government cannot revive a dormant right to administrative consideration after it has already effected a taking. Even if the government position at that time did not take the fee, recent authority suggests the conclusion it may have taken a temporary interest. First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 107 S.Ct. 2378 (1987). A position of adamant refusal to consider a permit was, with a change of occupant of the White House, changed to a virtual invitation to apply. Allied-General Nuclear Services, 839 F.2d at 1575, which suggests a temporary taking could have occurred but for other factors supporting dismissal in that case. The possibility, not refuted by anything in the record of a temporary taking, is a further reason why the order of dismissal was inappropriate and erroneous. Appellant might now actually receive a permit on its application, and yet all fifth amendment liability not be expunged so far as applicable to prior interference with his property rights.
 
 
 13
 There seems to have been, and now to be, an expectation that any possible award of a permit to mine would be stalled by an injunction obtained by environmental organizations in some court other than the Claims Court. The reluctance of appellant to be compelled by the exhaustion doctrine to contend with this kind of thing, at probable great expense, and unlikely benefit, is understandable. The exhaustion doctrine does not compel claimants to engage in combat when they do not themselves believe they could or should prevail. Whitney Benefits, Inc. v. United States, 752 F.2d 1554 (Fed.Cir.1985). Appellant here paints a picture of the devastation its mining operations, with necessary access through the forest for transportation means, would achieve in the intended national wilderness. The government is in effect insisting on the appellant going through all this before it will allow proceedings to determine whether appellant is entitled to just compensation and, if so, the amount thereof, and from what date delay damages will run.
 
 
 14
 We believe that, if the smoking out of a government position must go on, some rules should be understood:
 
 
 15
 First. A granting of a permit, by the Secretary or his delegate, followed by injunction stopping actual use according to the Secretary's grant, would not necessarily preclude a determination that there had been a taking. The impact of injunctions obtained for environmental purposes is not a novelty in this kind of litigation. In Benenson, supra, for instance, a part of the totality of government actions comprising the taking was an injunction obtained by an organization called "Don't Tear It Down, Inc." Id. at 946.
 
 
 16
 Second. It should be realized in this connection that the validity of the environmental objections to an intended use of property has nothing to do with the just compensation claim, in the prosecution of which, indeed, the rightness of the environmental objections must be taken as given. Florida Rock Industries, Inc. v. United States, 791 F.2d 893 (Fed.Cir.1986), cert. denied, 107 S.Ct. 926 (1987). It is easy to forget this: people's belief in the holiness of their cause always induces impatience with the rights of those who may stand in the way. Thus, the fact--should it appear--that an injunction against mining in the Alpine Lake area was abundantly justified, has no bearing on whether the claim for just compensation is justified also.
 
 
 17
 Third. If it turns out that the hope of favorable consideration of a permit application was all along a mirage, the clock of temporary taking liability will have been running. Substantial cost and counsel fee shifting may be possible under applicable law. There will be, as the trial court points out, serious ethical problems if any of the asserted government positions turn out to have been shams, either the asserted 1984 position that the property already belonged to the government to all intents, or the 1988 position that application for a permit would not be futile.
 
 
 18
 Fourth. The court shall prescribe a schedule for accomplishment of the steps necessary for exhaustion, that is, the appellant must file the necessary application within a stated time, and the appellee must act on it within a stated time thereafter. The court shall require progress reports to it from time to time also. The court shall grant a stay for the time necessary for exhaustion. The government shall provide copies of this decision and of the trial court's order or orders to the court and all counsel in any injunctive proceeding brought while the stay is in effect.
 
 
 19
 Fifth. Since this court has the impression that a narrower gap or margin between the government's best offer and the appellant's claim would facilitate a settlement, while the width of the difference has contributed to make settlement impossible hitherto, we would welcome the recourse to any method of alternative dispute resolution to enable the parties to form an idea how informed and impartial outside referees would evaluate the claim should it be held allowable.